(May 19, 2009)

■ ROBERT HAYNES, Appellant, v ESTATE OF SOL GOLDMAN, Deceased, et al., Respondents, et al., Defendant. ALLIANCE ELEVATOR COMPANY, Doing Business as UNITEC ELEVATOR COMPANY, Third-Party Plaintiff-Respondent, v MOHAMMAD FOFANA, Third-Party Defendant. ROBERT HAYNES, Plaintiff, v ESTATE OF SOL GOLDMAN, Deceased, et al., Respondents, and NEWMARK & COMPANY REAL ESTATE, INC., Appellant. (And a Third-Party Action.) [880 NYS2d 609]—

Order, Supreme Court, Bronx County (Nelson S. Roman, J.), entered August 17, 2007, which granted motions by defendants Estate of Sol Goldman, 41-45 West 34, Midboro Holding Company, Winoker Realty Co. (collectively the Goldman defendants) and Alliance Elevator Company doing business as Unitec Elevator Company sued herein as Unitek/North American Elevator Service for summary judgment dismissing the complaint as against them, unanimously affirmed, without costs. Order, same court and Justice, entered on or about January 18, 2007, which, to the extent appealed from, denied so much of the motion by defendant Newmark & Company Real Estate for summary judgment on its cross claim against Midboro Holding for contractual indemnification, unanimously reversed, on the law, without costs, that portion of the motion granted, and the matter remanded for further proceedings.

On February 6, 2004, plaintiff and another person named Mohammad Fofana were injured when they fell down the freight elevator hoistway from the fourth floor of a building located at 45 West 34th Street. The premises were net leased to Midboro Holding at the time, and had been managed by Newmark. Plaintiff had a dispute with Fofana and the two engaged in a fight in a narrow hallway on the fourth floor. According to

Fofana's deposition, plaintiff pushed him into the hoistway door. The complaint alleged negligence on the part of the building's owners, its managing agent and Alliance, the owners' elevator service contractor. Plaintiff testified that the hoistway door opened after Fofana stepped backward and came into contact with it. Plaintiff further swore that Fofana then clutched him in an effort to break his fall, causing both men to fall into the hoistway.

According to the affidavit of Patrick McPartland, P.E., the Goldman defendants' expert, the doors of the manually operated elevator in question consisted of two solid panels. The first panel opened by sliding right to left. The second panel was hinged to the wall. The sliding panel hung from a track by rollers, and was retained at the bottom by a six-inch guide which McPartland described as a "U" channel. Thomas Davies, a supervisor elevator inspector from the New York City Department of Buildings, inspected the site within 80 minutes after the accident. He testified that the sliding panel guide was bent and protruded into the hoistway in a manner indicating that a substantial horizontal force had been exerted against the sliding panel. In examining other parts of the building, Davies recorded loose and missing hanger track bolts which rendered the 12th floor hoistway door ready to fall. Davies's report also noted that the rest of the hoistway doors were loose and poorly secured. McPartland opined that the damage to the guide could only have been caused by the application of the kind of force described by Davies in excess of 250 pounds. McPartland further opined that the applied force caused the sliding panel to swing out into the elevator shaft, creating the opening through which plaintiff and Fofana fell. Bernard Hughes, Alliance's elevator expert, who also inspected the elevator on the date of the accident, similarly concluded that a heavy horizontal blow from the direction of the hallway toward the hoistway significantly damaged the guide, causing the sliding door panel to deflect out of the guide and into the hoistway. Davies testified that the sliding doors were prevented from moving horizontally by an interlock. Both Davies and Hughes inspected the interlock and found it to be intact on the date of the accident. McPartland further opined that neither the hoistway door nor the elevator car could have been operated prior to the accident with the "U" channel in its bent condition. On this score, Lance Dixon and James Louallen, building employees who operated the freight elevator, testified there had been no problem with the fourth floor hoistway door before the accident occurred. Paul Reinert, an elevator mechanic employed by Alliance, stated in his affidavit that he found nothing out of order with respect to the fourth

floor hoistway door when he serviced the elevator on February 2 and 4, 2004, two days before the accident. Hank Krussman, a licensed elevator inspector, had conducted a Local Law No. 10 (1981) of City of New York inspection of the elevator and the subject hoistway door five months before the accident, noting no problem with the hoistway door at that time. Based upon the foregoing, the Goldman defendants and Alliance have made a prima facie showing that the accident was not caused by any defect in the hoistway door.

Plaintiff countered with two affidavits in November 2006 by Patrick A. Carrajat, an elevator expert who inspected the site 16 months after the accident. Referring to Davies's report of defects in other hoistway doors, Carrajat opined that an insufficient "level of maintenance, repair and modernization" and "an advanced state of disrepair" of the elevator doors were the proximate causes of the accident. In this respect, Carrajat's opinion consisted of unfounded speculation, insufficient to raise a triable issue of fact as to the condition of the fourth floor hoistway door at the time of the accident (see e.g. Avina v Verburg, 47 AD3d 1188, 1189 [2008]). As noted above, Davies, McPartland and Hughes opined that the door guide was bent by a substantial horizontal force. Carrajat tried to refute these opinions with more speculation that freight door guides could have been damaged by objects such as hand trucks or carts. However, Carrajat did not contradict McPartland's opinion that neither the hoistway door nor the elevator car could have been operated with the guide in its bent condition. Carrajat's affidavits were further flawed by their failure to address the findings by Davies and Hughes that the interlock, which secured the sliding door, was intact after the accident. Without identifying any relevant component part, Carrajat concluded one of his affidavits with the statement that the hoistway door was in an "advanced state of decay and deterioration." The other affidavit ended with the legal opinion that there are "many triable issues of fact" relating to defendants. These affidavits were insufficient to raise any triable factual issue because they are speculative and lacking in foundation (see Santoni v Bertelsmann Prop., Inc., 21 AD3d 712, 715 [2005]). Accordingly, summary judgment was properly granted in favor of the Goldman defendants and Alliance.

Supreme Court, however, should have awarded Newmark contractual indemnification against Midboro, having found that Newmark, like the other defendants, did not create or have notice of any defect that could have caused the accident. Although an indemnification clause that purports to insulate the

indemnitee from liability for its own negligence is void under General Obligations Law § 5-322.1, the statute does not apply where, as here, the indemnitee is found to have been free of negligence (*Crouse v Hellman Constr. Co., Inc.*, 38 AD3d 477, 478 [2007]). The absence of a recitation in the clause that the obligation to indemnify is limited to what the law allows does not dictate a contrary conclusion (*id.*). Concur—Gonzalez, P.J., McGuire, Moskowitz, DeGrasse and Freedman, JJ.